UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

MOHAMED MOHAMED,

    Plaintiff,

v.

SOUTH BROWARD HOSPITAL DISTRICT,
d/b/a Memorial Healthcare System, and
ADENIKE AKINGBADE ("NIKKI"), an individual,

    Defendants.

_____/

## COMPLAINT

Plaintiff, Mohamed Mohamed ("Mohamed"), through his undersigned attorneys, files this Complaint against the Defendants, South Broward Hospital District ("SBHD") and Adenike Akingbade (hereinafter, "Defendant"), and alleges:

## JURISDICTION AND VENUE

1. This suit is brought against the Defendant pursuant to 29 U.S.C. § 201 *et seq.* ("Fair Labor Standards Act" or "FLSA").

2. Jurisdiction is conferred upon this Court by:

    (a)    28 U.S.C. § 1331;

    (b)    28 U.S.C. § 1343; and

    (c)    29 U.S.C. § 216(b), which allows for a FLSA claim to be brought in any court of competent jurisdiction.

3. Venue is proper for the Southern District of Florida because:

(a)      Mohamed was employed in the Southern District of Florida by the Defendants which at all material times conducted, and continues to conduct, business in Broward County and worked his overtime in the Southern District at the Defendants' instruction; and

(b)      Additionally, venue lies because the acts that gave rise to Plaintiff's claims occurred in the Southern District of Florida (Akingbade ordered him to work overtime here) and because the corporate Defendant transacts its customary business in this district.

### CONDITIONS PRECEDENT/ADMINISTRATIVE EXHAUSTION

4.      Plaintiff has complied with all conditions precedent in this case, or they have been waived.

### PARTIES

5.      Mohamed resides within this judicial district.

6.      Defendant South Broward Hospital District, d/b/a Memorial Healthcare System ("SBHD" or the "District"), identifies itself as an independent special district with hospitals across southern Broward County, Florida.  The District is the third largest public healthcare system in the country with more than approximately 15,000 employees, and millions of dollars in insurance coverage available to cover claims like Mohamed's from its carrier AIG.  The District is part of the public hospital system.  The District is a state-charted special taxing district, with $2,000,000,000.00+ in annual revenue, governed by a 7-member board of "commissioners" appointed by the governor (hereinafter referred to as "the Board", with the Commissioners being referred to as "board members" or "commissioners").

7.      The corporate Defendants paid employees and paid Mohamed and have gross annual sales volume that greatly exceeds $500,000 annually for years 2022-26.

8.      The corporate Defendant has two or more employees engaged in commerce, as they have two or more employees who handle, work on, and use goods or materials that have been moved in interstate commerce and/or manufactured outside the state of Florida.

9.      For example, in the South Florida location Defendant has at least 15 employees two or more who use computers, computer software, office supplies, copiers which were manufactured outside the State of Florida (and thus have moved in interstate commerce), and use cars and vehicles and boats and work on boats that in turn use gasoline, which vehicles, boats, and gasoline were manufactured outside the State of Florida.

10.      Further, the Defendant has various employees make long distance phone calls (suppliers, internet purchases, advertisers, and others) and sent emails to individuals who reside out of the State of Florida regularly and recurrently to effectively communicate for the businesses to operate.

11.      Individual Defendant Akingbade is Mohamed's supervisor who operates Mohamed's area of the hospital day-to-day and has operational control over the corporate Defendant deciding all financial decisions and having say over numerous employees and directing their work day-to-day, including how much they would be paid and when they would be paid, whether they had to work off of the clock, as the individual Defendants also had the power the hire and fire, daily managed the company and was ultimately responsible for the profitability of the business.

12.      Concerning Mohamed, Defendant Akingbade hired him, told him what to do day-to-day, determined how much and whether he would be paid (that he had to work off of the clock to reduce payroll, at least those were the excuses given by Defendant Akingbade to Mohamed), and Mohamed had to follow the individual Defendant's orders.

13.      The corporate Defendant is an "employer" pursuant to 29 U.S.C. § 203(d) of the Fair Labor Standards Act, and so too are the individual Defendant.   The corporate Defendant is an

3

"enterprise" pursuant to 29 U.S.C. § 203(r) of the Fair Labor Standards Act. The corporate Defendant is an enterprise "engaged in commerce" pursuant to 29 U.S.C. § 203(s) of the Fair Labor Standards Act. During all times relevant to this action, the corporate Defendant was an enterprise engaged in commerce as defined in 29 U.S.C. §§ 203(r) and 203(s).

14.     Mohamed was an "employee" pursuant to 29 U.S.C. § 203(e)(1) of the Fair Labor Standards Act. Mohamed was a non-exempt employee of Defendant who was subject to the payroll practices and procedures described in Paragraphs 23, 24, and 25 below, and who worked in excess of forty (40) hours during one or more workweeks within three (3) years of the filing of this Complaint.

14.5.   At all times pertinent to this Complaint, Defendant failed to comply with 29 U.S.C. §§ 201-219 in that Mohamed performed services for Defendant for which no provision was made to properly pay for those hours in which overtime was required to be paid, which requires the payment of wages at time and one-half for all hours worked in excess of forty (40) hours in each workweek.

## STATEMENT OF FACTS

15.     Within the past three (3) years approximately (June 2022 to the present), Mohamed worked for the Defendant performing various maintenance and janitorial duties, using chemicals and equipment and cleaning up and discarding trash.

16.     Mohamed's duties included doing whatever task the Defendants instructed him to perform, which varied depending on the time, but he was required to perform assignments given to him by the Defendants and they involved trash cleanup and removal, cleaning up the work location, and, and had to obtain Defendants' approval as to how they wanted to handle certain situations.

17.     Mohamed did not have the ability to hire or fire anyone (nor did he hire or fire anyone), and he did not regularly and customarily direct the work of any employees, much less two or more full-time workers.

4

18. Mohamed was only given tasks that were designed to facilitate production work of the Defendant, such as the tasks described above, all of which consisted of regular, recurrent, and routine work that did not involve him exercising independent judgment and discretion on matters of significance.

19. Mohamed's primary duties were not management.

20. During Mohamed's employment, Mohamed did not have any authority to interview, select, and/or train employees.

20.1. Mohamed did not have any authority to set and adjust the rates of pay and hours of work for any employees.

20.2. Mohamed had no authority to direct the work of employees.

20.3. Mohamed did not maintain production or sales records at all when he worked for the Defendant, nor did he use any such records to supervise or control any employee.

20.4. In fact, Mohamed knows little about the business's financing or financial success or failure.

20.5. The finances were not his responsibility.

20.6. Mohamed did not supervise any staff. Mohamed had absolutely no say concerning any of the costs. For example, concerning wages paid to employees, Mohamed had no say concerning what any particular employee would be paid, how many employees could work in the buildings, when, what hours they could work, whether their pay should be increased or decreased, as all of that was determined by the Defendants.

20.7. Mohamed had no authority to spend any of the Defendant's money at all, and had no authority to authorize the payment of bills.

20.8. Mohamed never opened up any mail that came to the building for purposes of making any decision concerning the business with respect to that mail.

5

21.     While Mohamed worked for the Defendants, he never appraised employees' productivity and/or efficiency for the purpose of recommending promotions or other changes in status.

21.1.   While Mohamed worked for the Defendants his last four years, he never handled employee complaints and grievances, as that was for the Defendants to do.

21.2.   Also, Mohamed never disciplined employees, nor did he have the power or authority to do that.

21.3.   Mohamed did not plan any work for any employee, as there was no work to plan.

21.4.   Mohamed never determined any techniques to be used by employees to do their job.  Mohamed never apportioned work among any employees, as there were no employees who reported to him to whom to apportion work.

21.5.   Mohamed never determined the type of materials, supplies, machinery, equipment, or tools to be used by any employees, as the Defendants or the employees themselves decided all of that.

21.6.   Mohamed had no involvement in controlling the flow and distribution of materials or merchandise and supplies.

21.7.   Mohamed had nothing whatsoever to do with materials, merchandise, or supplies or their distribution. Mohamed had no involvement with respect to budgeting.

21.8.   Mohamed was not involved in reviewing any sort of financial documents or statements of the buildings, and he did not review any such documents, nor was Mohamed supposed to.

21.9.   Mohamed had no involvement in monitoring or implementing legal compliance measures.  There were no legal issues that Mohamed had anything to do with in terms of deciding how they would be handled or dealt with while he worked for Defendant, nor did he have anything

6

to do with paperwork concerning new employees or hires. Mohamed simply followed the established techniques and procedures with respect to his duties, all of which were repetitive, routine, and recurrent work.

22. Mohamed did not do anything that could have resulted in financial losses for the Defendants.

22.1. Mohamed did not perform work that was directly related to management or general business operations of Defendants or their customers, because Mohamed did not perform work directly related to assisting with the running or servicing of the business, but rather was engaging in production work (removing trash, and work arising out of and associated with that).

22.2. Mohamed also did not perform work directly related to the management or general business operations of the Defendants because Mohamed did not work in a functional area such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

22.3. Rather, Mohamed was one more person looking to perform production work the Defendants rely on so heavily, assist with the production work of trash cleanup and waste removal.

23. In the course of employment with Defendant, Mohamed worked the number of hours required of him, but were not paid time and one-half for all hours worked in excess of forty (40) during a workweek.

24. Mohamed regularly worked in excess of forty (40) hours per workweek—his clock-in times show 48 hours per week on average when he worked 6 days per week and 40 hours if he worked 5 days, but in reality he worked 1.5 hours off of the clock every shift (whether he worked 5 or 6 days per week) from 3:30 a.m. – 5:00 a.m. at the direction of Defendants.

7

25.     The Defendant should have partial accurate records of hours worked, because it required Mohamed to clock in (though he was given tasks and worked off of the clock when instructed to).

25.1.   In or about 2022, Mohamed was hired by Defendants in the position of environmental technician.

25.2.   Defendants trained Mohamed.

25.3.   Mohamed worked full-time 5 or 6 days/wk (roughly 3:30 a.m. to 12:00 noon), with the hours of 3:30 – 5:00 being off of the clock—other employees had to work off of the clock, too.

25.4.   Mohamed was paid $19.00/hr, and thus his overtime rate is $28.50.  Thus, the overtime he is owed can be calculated as:  9 hrs/wk x 28.50/hr x 182 wks = $46,683.00.   This overtime is subject to doubling as liquidated damages under the FLSA because Defendants intentionally instructed him to work off of the clock and otherwise failed to pay him overtime when it was due.

26.     Mohamed has retained the undersigned legal counsel to prosecute this action in his behalf, and has agreed to pay them a reasonable fee for their services.

27.     Mohamed is entitled to his reasonable attorneys' fees for prosecuting this action, whether or not he is the prevailing party.

### <u>COUNT I – RECOVERY OF OVERTIME COMPENSATION</u>

28.     Mohamed re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 27 above as though fully set forth.

29.     Mohamed is entitled to be paid time and one-half for each hour worked in excess of forty (40) in each workweek.

30.     By reason of the intentional, willful, and unlawful acts of Defendant, Mohamed has suffered damages, *e.g.*, back pay for overtime wages, liquidated damages, and compensatory damages, plus incurring costs and reasonable attorneys' fees.

31.     As a result of the Defendant's willful violations of the Act, and the failure to pay overtime which was not in good faith, as discussed above, Mohamed is entitled to liquidated damages as provided in § 216 of the FLSA, and is entitled to recover damages going back to June 2022.

WHEREFORE, for workweeks going back to June 2022, Mohamed demands judgment against Defendants for the wages and overtime payments due him for the hours worked by him for which he has not been properly compensated (back pay), liquidated damages, reasonable attorneys' fees and costs of suit, and for all proper relief including pre-judgment interest, and any further relief that the Court deems necessary.

<u>**DEMAND FOR TRIAL BY JURY**</u>

Plaintiffs demand trial by jury on all issues and all counts of this Complaint so triable as a matter of right.

Dated:   <u>     March 16, 2026                        </u>

Respectfully submitted,

By: <u>/s/Chris Kleppin</u>
Chris Kleppin
Fla. Bar No. 625485
chris@kleppinlaw.com
The Kleppin Firm, P.A.
*Attorneys for Plaintiff*
8751 W. Broward Blvd.
Suite 105
Plantation, FL 33324
Tel. (954) 424-1933
Fax  (954) 474-7405
Secondary E-Mails:   elethia@kleppinlaw.com
assistant@kleppinlaw.com